UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KURQE LOVE,

                Petitioner,                    Case No. 2:18-cv-11944
                                                      Hon. Victoria A. Roberts

v.

SHERMAN CAMPBELL,

                Respondent.
_____/

**OPINION AND ORDER (1) DENYING AMENDED PETITION FOR WRIT OF HABEAS CORPUS, (2) DENYING A CERTIFICATE OF APPEALABILITY, AND (3) DENYING PERMISSION TO APPEAL IN FORMA PAUPERIS**

    Kurqe Love, a Michigan prisoner, filed this petition for a writ of habeas corpus under 28 U.S.C. § 2254. Love is serving a prison sentence for his Wayne Circuit Court bench trial conviction of three counts of assault with intent to do great bodily harm, MICH. COMP. LAWS § 750.84; felonious assault, MICH. COMP. LAWS § 750.82; felon in possession of a firearm, MICH. COMP. LAWS § 750.224f; carrying a concealed weapon, MICH. COMP. LAWS §750.227; and felony-firearm, MICH. COMP. LAWS §750.227b.

    The petition raises four claims: (1) constitutionally insufficient evidence was presented at trial to sustain Love's assault convictions, (2) constitutionally insufficient evidence was presented at trial to disprove Love's self-defense claim, (3) Love was deprived of the effective assistance of counsel when his attorney waived his right to a jury trial and failed to adequately prepare for trial, and (4) Love was denied his right to a jury trial.

    The Court will deny the petition because the claims are without merit. The Court will also deny Love a certificate of appealability and deny leave to appeal in forma pauperis.

1

**I. Background**

The Michigan Court of Appeals summarized the facts of the case as follows:

> Defendant's convictions arose out of a shooting on November 21, 2014. While defendant was standing in front of a residence, he began arguing about money with Devon Wilford and Christopher Evans. Two other individuals were standing with defendant, Wilford, and Evans. After becoming angry, defendant held a gun to Wilford's head. Defendant then fired multiple shots toward the group, which dispersed. After running off, Evans realized that he had been shot in the leg. At trial, defendant denied shooting the gun in anger. Defendant testified that he only fired one shot into the ground so that Evans would leave the scene. Defendant explained that he felt threatened by Evans because he knew that Evans carried a gun and Evans was "putting on a threat like he's gonna take . . . money from me." Defendant acknowledged that he did not see Evans holding a gun.

*People v. Love*, No. 328662, 2016 WL 7427089, at *1–3 (Mich. Ct. App. Dec. 20, 2016).

Love was originally charged with four counts of assault with intent to murder, one count of assault with a dangerous weapon, one count of possession of a firearm by a felon, one count of carrying a concealed weapon, and one count of felony-firearm. On the morning of trial, Petitioner waived his right to a jury trial. (ECF No. 11-2.)

At the bench trial, Tijuana Yancy testified that she was sixteen years old, and Devon Wilford was a woman she knew who lived on her street. (ECF No. 11-3, at 7-8.) On November 21, 2014, sometime around noon, she was with Wilford at her house because she had been kicked out of school earlier that morning. (id., at 11, 96.) While she was at the house, Wilford called Christopher Evans, who arrived a few minutes later with two other people. (id., at 13-14.) The father of one of Wilford's children (later identified as Love by Wilford and Evans) arrived in another car at about the same time. (id., at 104-105, ECF No. 11-5, at 5-6.)

Love and Wilford went inside the house to talk, and they came back outside a few minutes later. (ECF No. 11-3, at 22.) Love and Wilford then started arguing with Evans about a borrowed DVD player and FEMA money that Wilford collected for damage caused by a flood. (id., 23.)

Evans had helped Wilford complete the FEMA paperwork, and he thought he was entitled to some of the money, but she already spent it. (id., 65, 110.)

Hearing that Wilford received FEMA money that he did not know about, Love took out a gun and put it to Wilford's head. (id., 25.) Evans asked Love to stop because Wilford was Love's son's mother. (id., at 111.) Love then took the gun away from Wilford's head, aimed it at Evans, and started shooting. (id., 111.) He fired about three shots towards Evans as he ran in one direction, and then he fired about five shots in the direction Wilford ran. (id., at 118.) Yancy hid behind the house in some bushes. Evans jumped over a fence and saw that he was shot in the leg. (id., at 112.) Wilford tried to get inside her house as Love fired the shots at Evans. (id., at 115.) Before police arrived, Love drove past Yancy and told her that if she told anyone what happened that he was going to come and kill her and her family. (id., 56.)

Wilford testified that she did not recall what happened, and that her statements to police a few days after the incident were "messed up." (ECF No. 11-5, at 26-28.) Wilford was asked if she remembered her previous testimony or the events, and she largely denied that she remembered anything. (id., at 33-42.)

Love testified in his own defense. He stated that he went over to Wilford's house to give her some money to care for his son. (id., at 79.) He suspected that she was a drug addict, and he did not want her to spend the money on drugs. (id., at 86.) Love believed that Evans was selling marijuana at Wilford's house, and he wanted that stopped. (id., at 81.) When he saw Evans outside, they began arguing, and Evans brought up the FEMA money. Wilford then came outside and was angry that Evans told Love about the FEMA money. (id., at 91.) Love was angry that the money he just gave Wilford would probably be turned over to Evans. (id., at 93-95.) Evans was provoking Love, and Evans had his hand in his pocket as if he had a gun. (id., at 95.) Love knew that Evans

3

carried a weapon. (id., at 99.) Love claimed that he only shot his gun once into the ground to scare Evans away. (id., at 101-102.) Love denied shooting or pointing his gun at anyone. (id., 101.)

Based on this evidence, the trial court found Love guilty of three counts of the lesser offense of assault with intent to commit great bodily harm for the shooting at Evans, Wilford, and Yancy, felonious assault for putting the gun to Wilford's head, carrying a concealed weapon, felon in possession of a firearm, and felony-firearm.

Following sentencing, Love filed a claim of appeal. His appellate counsel filed a brief on appeal that raised the following four claims:

> I. There was insufficient evidence for the trial court to convict defendant of three counts of assault with intent to do great bodily harm less than murder.
>
> II. There was insufficient evidence for the trial court to convict defendant of felon in possession and felony firearm.
>
> III. Trial counsel was ineffective in representing defendant thereby violating his Sixth Amendment right to counsel.
>
> IV. Defendant's constitutional right to a jury trial was violated when the trial court conducted a bench trial without his waiver.

The Michigan Court of Appeals affirmed in an unpublished opinion. *Love*, 2016 WL 7427089. Wilson then filed an application for leave to appeal in the Michigan Supreme Court, but it was denied by standard form order. *People v. Love,* 901 N.W.2d 398 (Mich. 2017)(Table).

Wilson's habeas petition raises the same four claims he presented to the state courts in his direct appeal.

## II. Standard of Review

28 U.S.C. § 2254(d)(1) curtails a federal court's review of constitutional claims raised by a state prisoner in a habeas action if the claims were adjudicated on the merits by the state courts.

Relief is barred under this section unless the state court adjudication was "contrary to" or resulted in an "unreasonable application of" clearly established Supreme Court law.

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003), quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

"[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) quoting *Williams*, 529 U.S. at 413.

### III. Discussion

A. Sufficiency of the Evidence – Assault Convictions

Love first claims that constitutionally insufficient evidence was presented at trial to establish the assault with intent to commit great bodily harm and felonious assault convictions. Love does not challenge the sufficiency of the evidence as to his identity. Rather, he asserts that the prosecutor did not prove that he possessed the mental states for the assault convictions.

After reciting the controlling constitutional standard, the Michigan Court of Appeals rejected the claim on the merits:

> The elements of assault with intent to do great bodily harm less than murder are: "(1) an attempt or threat with force or violence to do corporal harm to another (an assault), and (2) an intent to do great bodily harm less than murder." *People v. Brown*, 267 Mich. App 141, 147 (2005) (emphasis removed). This Court has defined the intent to do great bodily harm as "an intent to do serious injury of an aggravated nature." *Id*. (citations and quotation marks omitted). The intent to shoot another person with a firearm "unquestionably manifests an intent to do great bodily harm." *See People v. Montgomery*, 43 Mich. App 205, 206-207 (1972).

5

>       The prosecution presented evidence that defendant was angry before the shooting. Further, Tijuana Yancy testified that the shooter fired multiple shots at her, Wilford, Evans, and a man named "Shontez." Evans testified that defendant fired the gun at him while Evans was standing next to Shontez and that defendant then "turn[ed] back towards [Wilford] and then start[ed] shooting." Defendant had been standing about five feet away from Evans before he began shooting, and Evans stated that Yancy was six to ten feet from defendant. Evans saw defendant fire three shots at Wilford. Evans further testified that one of the bullets struck him in the leg. The evidence that defendant became angry and then fired multiple shots from a gun at the victims while near them was sufficient to support defendant's conviction of assault with intent to do great bodily harm less than murder. While defendant argues that the witnesses that testified against him were not credible, when reviewing the sufficiency of the evidence, this Court will not interfere with the factfinder's assessment of the credibility of the witnesses. *People v. Dunigan*, 299 Mich. App 579, 582 (2013). Accordingly, defendant has not shown that the evidence was insufficient to support his conviction for assault with intent to do great bodily harm less than murder.
>
>       Defendant next argues that the evidence was insufficient to prove beyond a reasonable doubt that he was guilty of felonious assault. We disagree. The elements of felonious assault are: "(1) an assault, (2) with a dangerous weapon, and (3) with the intent to injure or place the victim in reasonable apprehension of an immediate battery." People v. Avant, 235 Mich. App 499, 505; 597 NW2d 864 (1999). Yancy and Evans both testified that defendant held a gun to Wilford's head. Although while testifying at trial Wilford could not remember whether defendant held a gun to her head, her statement to the police was admitted into evidence under MCL768.27c(1). In the statement, Wilford indicated that defendant put a gun to her head, she ran away from him, and then she heard two or three shots. The evidence that defendant held a gun to Wilford's head was sufficient to prove beyond a reasonable doubt that defendant was guilty of felonious assault. Avant, 235 Mich. App at 505[–]506 (holding that testimony that the defendant pointed an assault rifle at the victim was sufficient to prove beyond a reasonable doubt the elements of felonious assault).

*Love*, 2016 WL 7427089, at *1-2 (footnote omitted).

In *Jackson v. Virginia*, 443 U.S. 307 (1979), the Supreme Court clearly established the standard for resolving sufficiency claims. A reviewing court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 319. The *Jackson* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the

testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id*. Witness credibility remains the province of the jury, *see Herrera v. Collins*, 506 U.S. 390, 401-02 (1993), and an attack on witness credibility constitutes a challenge to the quality, but not the sufficiency of the government's evidence. *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002). The habeas court need only examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196-97 (6th Cir. 1988).

Moreover, because both the *Jackson* standard and AEDPA apply to Petitioner's claims, "the law commands deference at two levels in this case: First, deference should be given to the trier-of-fact's verdict, as contemplated by Jackson; second, deference should be given to the Michigan Court of Appeals' consideration of the trier-of-fact's verdict, as dictated by AEDPA." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008). This standard erects "'a nearly insurmountable hurdle'" for petitioners who seek habeas relief on sufficiency-of-the-evidence grounds. *Davis v. Lafler*, 658 F.3d 525, 534 (6th Cir. 2011) (en banc) (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

The Michigan Court of Appeals did not unreasonably apply this standard to Love's claim. To a large extent, Love's claim challenges the credibility of the eyewitnesses who variously testified to Love putting a gun to Wilford's head and then firing multiple shots towards Wilford, Evans, and Yancy. He suggests various reasons why the witnesses' testimony was unworthy of belief beyond a reasonable doubt. But part of the established Supreme Court standard requires a reviewing court to presume that such challenges were resolved by the jury (or here the trial court sitting as finder of fact) in favor of the prosecution. *See Schlup v. Delo*, 513 U.S. 298, 330

7

(1995)("[T]he assessment of credibility of witnesses is generally beyond the scope of review.") And here, the trial court specifically decided to believe parts of each witnesses' testimony based on how it was mutually corroborated with the other evidence and testimony:

> I think that these witnesses lied about some things but told the truth about others. And I don't know why it is, I don't know if it's because this young lady, Tijuana Yancy, has some sort of loyalty to this older woman, Devon Wilford, and so she's in alliance with her in trying to keep her son's father from getting in trouble for this. Or I don't know if it's because they're afraid or intimidated by the defendant, but it's no question in my mind that Mr. Love was out there with a gun.

(ECF No. 11-6, at 27-29.)

The trial court then went on to articulate why it believed Love did not intent to murder anyone (because he easily could have), but that he intended to cause great bodily harm. The court also believed the testimony that Love put the gun to Wilford's head. (id., at 29-30.)

The Michigan Court of Appeals did not unreasonably apply the *Jackson* standard by deferring to this credibility determination and finding sufficient evidence of intent to cause great bodily harm and felonious assault. Accepting as true the testimony that Love fired towards the running witnesses and that Evans was hit in the leg, sufficient evidence was presented of an intent to cause great bodily harm. And accepting as true the testimony that Love put a gun to Wilford's head, sufficient evidence was presented that Love put Wilford in reasonable apprehension of an immediate battery.

Love's first claim is therefore without merit.

B. Sufficiency of the Evidence – Absence of Self-Defense

Love next asserts that insufficient evidence was presented at trial with respect to the felon in possession and felony-firearm convictions to disprove his claim of self-defense. Love argues that the prosecutor did not disprove his contention that he brandished the firearm out of a

8

reasonable fear of imminent assault from Evans. The Michigan Court of Appeals rejected the claim as follows:

> The defense theory was that defendant fired one shot from the gun so that Evans would leave the scene. Defendant testified that Evans threatened to take his money, and that he fired one shot into the ground "[t]o back him off, to scare him off, I mean just get him away." Defendant testified that Evans had his hand in his pocket while threatening to take the money. Defendant added that he knew Evans carried a weapon "[a]ll the time."
>
> To disprove defendant's claim of self-defense, the prosecutor presented the testimony of Yancy and Evans, indicating that defendant shot at the victims out of anger while arguing with Wilford and Evans. In addition, Evans testified that he was not carrying a gun on the day of the shooting and denied making any gestures indicating that he had a weapon. While defendant testified that Evans had his hand in his pocket, he acknowledged that he never saw a gun in Evans's hand on the day of the shooting. Defendant acknowledged that he was a convicted felon and was prohibited from possessing a firearm.
>
> As the trier of fact, the trial court "is free to believe or disbelieve, in whole or in part, any of the evidence presented." *See People v Perry*, 460 Mich. 55, 63 (1999). The trial court specifically found that it did not believe defendant's testimony that he fired the gun into the ground just to scare Evans. While the trial court noted that witnesses "lied about some things but told the truth about others," it ultimately concluded that defendant shot the gun at the victims after he "snapped." The evidence was sufficient to support the trial court's finding that defendant shot the gun out of anger rather than in self-defense. The felon-in-possession and felony-firearm convictions were adequately supported.

*Love*, 2016 WL 7427089, at *3.

As an initial matter, the Court notes that the claim may not be cognizable in this action because Love had no federal constitutional right for the prosecutor to disprove his affirmative defense beyond a reasonable doubt. *See Caldwell v. Russell*, 181 F.3d 731, 740 (6th Cir. 1999).

But assuming the claim is cognizable, it was reasonably rejected by the state appellate court. To prevail on a defense of self-defense, a defendant must show "that [his] criminal possession of the firearm was justified because defendant honestly and reasonably believed that his life was in imminent danger and that it was necessary for him to exercise force to protect

himself." *People v. Dupree*, 788 N.W.2d 399, 408 (Mich. 2010). Again, the Court of Appeals deferred to the credibility determination made by the trial court regarding which testimony to believe and which testimony not to believe. Based on that determination, the trial court found that Love did not brandish the firearm because he was afraid of Evans. The trial court, instead, found that Love pulled the gun and started firing because he was angry with Evans – that Evans had provoked him and "caused him to snap." (ECF No. 11-6, PageID.445.) Resolving such credibility determinations in favor of the prosecution, sufficient evidence was presented to support that conclusion.

Love therefore fails to demonstrate entitlement to relief with respect to his second claim.

C.  Ineffective Assistance of Counsel

Love next claims that his trial counsel was ineffective for waiving his right to a jury trial and for failing to conduct an adequate pretrial investigation. The Michigan Court of Appeals rejected the claim on the merits after reciting the controlling constitutional standard.

First, with respect to counsel's alleged lack of advice regarding the jury trial waiver, the state court found as follows:

> Here, the record contains a signed jury waiver form dated May 20, 2015, indicating that defendant wished to waive his right to a jury trial. In addition, the court held a hearing on May 20, 2015, regarding defendant's waiver of a jury trial. At the hearing, defendant, who was represented by counsel, stated, under oath, that he read and understood the waiver form, that he was not under the influence of drugs or alcohol, that he was not threatened or forced into waiving his right to a jury, that he had an opportunity to discuss the matter with his attorney, and that his decision to waive a jury was not induced by a promise of leniency. Therefore, defendant's claim that defense counsel was ineffective for waiving defendant's right to a jury trial without complying with MCR 6.402 is without merit.

*Love*, 2016 WL 7427089, at *4.

To prevail on his claims, Love must show that his "counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S.

10

668, 687 (1984). The deficient-performance prong "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. Love "must show that counsel's representation fell below an objective standard of reasonableness." *Id*. at 688.

The "prejudice" prong "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687. Love must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

"The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 562 U.S. at 105 (internal citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id*.

A defense attorney has a duty "to consult with the client regarding 'important decisions . . . .'" *Florida v. Nixon*, 543 U.S. 175, 187 (2004). But "the accused has the ultimate authority to make certain fundamental decisions regarding the case," including whether to waive a jury. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). "Concerning those decisions, an attorney must both consult with the defendant and obtain consent to the recommended course of action." *Nixon*, 543 U.S. at 187.

Love admitted on the record prior to trial that his counsel consulted him about whether to waive a jury trial. (ECF No. 11-2, at 3-6.) At no point in the waiver proceeding did Love assert that he did not understand the consequences of his decision, nor did he claim that he was promised

anything in exchange for his waiver, or that he was threatened. (id.) On appeal, Love failed to proffer the state court (or this Court) any explanation as to why or how counsel's advice to proceed with a bench trial instead of a jury was deficient. Because the *Srickland* standard directs a court to presume competent performance by counsel, and Love offers no argument as to why the advice to waive a jury trial was incompetent, the rejection of the claim by the state court was reasonable.

With respect to the allegation that trial counsel failed to perform an adequate pretrial investigation, the state court found as follows:

> Defendant next argues that he was denied the effective assistance of counsel because defense counsel failed to properly investigate the case. Defendant purports to contend that defense counsel never interviewed the complaining police officers, the officer in charge, or the man who made the 911 call, who could have established that only one shot was fired. He further purports to contend that defense counsel should have obtained the 911 tape, which may have included "invaluable information."
>
> "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. "The failure to make an adequate investigation is ineffective assistance of counsel if it undermines confidence in the trial's outcome." *People v. Grant*, 470 Mich. 477, 493 (2004). Here, defendant has waived the present issue through improper briefing. *See People v. Payne*, 285 Mich. App. 181, 188 (2009). Moreover, defendant has not established a factual predicate for his claim of ineffective assistance of counsel. *People v. Hoag*, 460 Mich. 1, 6 (1999). Defendant has not submitted affidavits or other evidence demonstrating that defense counsel failed to investigate the witnesses, that any of the witnesses would have testified that only one shot was fired, or that the 911 tape would have revealed any exculpatory evidence. Because it is not apparent from the record that defense counsel failed to investigate witnesses or other evidence that would have undermined the prosecutor's theory of the case, defendant has not shown that he was denied the effective assistance of counsel at trial.

*Love*, 2016 WL 7427089, at *4-5.

This claim was reasonably rejected for the same reason: Love completely failed to proffer any evidence whatsoever of deficient performance. As reasonably noted by the state court, the failure to proffer any facts as to how a different pretrial investigation would have affected the trial

12

is fatal to the claim. The state court noted that it was not apparent from the record that counsel was unprepared from trial. And it also noted that there was no evidence before it that there was any exculpatory evidence or testimony missed. Love initially asked for a hearing on his claim in the state court, but he failed to support the request with any offer of proof. (See Motion, ECF 11-9, PageID.558.) Then, at the hearing on his motion for new trial, appellate counsel *declined* an offer by the court for more time to file an affidavit to support the ineffective assistance of counsel claim with respect to counsel's preparation for Wilford's testimony. (Hrg. Tr., ECF No. 11-8, PageID.485-88.) On appeal, Love then chose to rely on the same conclusory allegations of unpreparedness that he presented to the trial court.

With no record evidence of ineffectiveness before it, and without an offer of proof of such evidence, the Court of Appeals did not unreasonably apply the *Strickland* standard in denying relief with respect to this claim. Conclusory allegations of ineffective assistance of counsel without any evidentiary support cannot support a claim for habeas relief. *See Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998). Without at least an offer of proof, Love cannot establish that his counsel performed deficiently in the pretrial period or that he was prejudiced as result. *See Clark v. Waller*, 490 F.3d 551, 557 (6th Cir. 2007).

Love therefore fails to demonstrate entitlement to relief with respect to this claim.

D. Jury Trial Waiver

Love's last claim asserts that his waiver of a jury trial was invalid because there is no evidence that he agreed to it. The Michigan Court of Appeals rejected the claim because it was belied by the record:

> Defendant's argument simply is not supported by the lower court record. As noted above, the lower court file contains a waiver form signed by defendant and dated May 20, 2015. In addition, the court held a hearing on May 20, 2105, at which defendant stated, under oath, that he wished to waive his right to a jury trial,

13

>that he had the opportunity to discuss the matter with his attorney, and that his decision to waive a jury trial was not induced by threats or promises. Therefore, defendant has not shown that the trial court violated his constitutional right to a jury trial.

*Love*, 2016 WL 7427089, at *5.

"[T]he Sixth Amendment right to a jury trial is 'fundamental to the American scheme of justice' and incorporated against the States under the Fourteenth Amendment." *Ramos v. Louisiana*, 140 S. Ct. 1390, 1397, 206 L. Ed. 2d 583 (2020)(quoting *Duncan v. Louisiana*, 391 U.S. 145, 148-150 (1968)). "Because the right to a jury trial is fundamental, a waiver of that right must be voluntary, knowing, and intelligent." *Haliym v. Mitchell*, 492 F.3d 680, 698 (6th Cir. 2007) (citing *Duncan*, 391 U.S. at 149, and *Brady v. United States*, 397 U.S. 742, 748 (1970)). On habeas review, "[a] petitioner bears the burden of proving that his waiver was not, in fact, voluntary, knowing, and intelligent. *Otte v. Houk*, 654 F.3d 594, 601 (6th Cir. 2011). "[T]he dispositive inquiry is whether the defendant understood that the choice confronting him was, on the one hand, to be judged by a group of people from the community, and on the other hand, to have his guilt or innocence determined by a judge." *Jells v. Mitchell*, 538 F.3d 478, 510 (6th Cir. 2008) (quotations marks and citations omitted).

As correctly indicated by the state court, Love executed a written waiver, and then an on-the-record waiver hearing was held immediately before trial. (ECF No. 11-2, at 3-6.) Love stated on the record that he understood his right to have his case heard by a jury, that he was not under the influence of alcohol or drugs, that he had discussed the matter with his attorney, and that he understood the court, and not a jury, would be the trier of fact. He denied that anybody had promised him anything to make him waive a jury, and he confirmed that no one had threatened or coerced him into waiving a jury. (id.) Based on this record, the contention that the waiver was invalid is without merit. The state court reasonably rejected the claim.

Because all of Love's claims lack merit, the petition for writ of habeas corpus is denied.

## IV. Certificate of Appealability

Before Petitioner may appeal this decision, the Court must determine whether to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To satisfy § 2253(c)(2), Petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citation and internal quotation marks omitted). The Court finds that reasonable jurists would not debate the resolution of any of Petitioner's claims. The Court will therefore deny a certificate of appealability.

Finally, Petitioner is not entitled to permission to appeal in forma pauperis because any appeal of this decision would be frivolous. 28 U.S.C. § 1915(a)(3).

## V. Conclusion

Accordingly, the Court 1) **DENIES WITH PREJUDICE** the amended petition for a writ of habeas corpus, 2) **DENIES** a certificate of appealability, and 3) **DENIES** permission to appeal in forma pauperis.

**SO ORDERED.**

s/ Victoria A. Roberts
Hon. Victoria A. Roberts
United States District Judge

Dated: 9/17/2021